KNOX vs. BIGELOW and others.

An administrator may sue, at his option, in his individual or representative capacity, for an injury done to goods of his intestate between the time of the death and the granting of letters of administration.

When in such an action the administrator sues in his representative capacity, and one of the defendants justifies the taking under a mortgage alleged to have been executed to him by the intestate, and a co-defendant justifies as the servant of the mortgagee, such co-defendant is not a competent witness to prove that the intestate executed said mortgage, although it appeared from other proof that such an instrument, purporting to have been executed by the intestate, was accidentally destroyed by fire, and that such co-defendant was a subscribing witness to it.

The exclusion of the co-defendant as a witness for such purpose would *seem* to be in accordance with the spirit of the law on that subject, even if the suit had been brought by the plaintiff in his individual capacity.

A jury are at liberty to look at parties in court for the purpose of determining questions of identity, and this court cannot say that the court below erred in refusing to dismiss an action of trespass as to a defendant who was identified as one of the wrongdoers only by a partial description of his personal appearance, the record showing that he was in court where the jury could see him, and not showing whether the description was or was not applicable to him.

In trespass by an administrator, the defense was that the goods were taken by virtue of a mortgage executed to one of the defendants by the intestate. On the trial, after showing that a mortgage upon the goods, purporting to have been executed by the intestate, had been accidentally destroyed by fire, another defendant, who was one of the subscribing witnesses to the alleged mortgage, was called to prove its execution, but was rejected as incompetent, and the defense failed for want of proof of the execution of the mortgage. A motion for a new trial was made, supported by the affidavit of a son of the intestate, that he had examined the alleged mortgage before its destruction, and knew that the signature to it was in his father's handwriting, and by the affidavit of the principal defendant that he did not discover until after the trial that the intestate's son knew the above fact, and that the other subscribing witness was not called at the trial to prove the execution of the mortgage because he had stated that he could not sufficiently recollect the transaction to testify in regard to it. *Held*, that a new trial should have been granted.

Under section 49, chapter 133, R. S., 1858, an administrator is not personally liable for costs in an action brought by him in his representative character for a conversion of the property of the estate, whether such conversion occurred before or after the death of his intestate, unless he has been guilty of mismanagement or bad faith in maintaining the action.

*It seems*, that section 13, chapter 103, R. S., 1858, is applicable only to cases and proceedings in probate courts.

APPEAL from the County Court of *Milwaukee* County.

*Knox*, as administrator of one Phalen, sued the defendants, *Bigelow*, *Freeman* and *Munyan*, for unlawfully taking a stock of boots &c., of which Phalen was possessed, as of his own property, at the time of his death.　Phalen died on the 22d of November, 1860, and administration was granted to the plaintiff, February 18th, 1861.　The answer justified the taking under a mortgage on the stock executed by Phalen, in his life time, to *Bigelow*, by which the mortgagee was authorized, at any time when he deemed himself insecure, to take possession of the goods and sell them &c., and alleged that *Munyan* and *Freeman* acted as the agents of *Bigelow* in taking possession of the goods.　There was also a general denial. The proof that *Munyan* was present at the taking of the goods, was this:　One witness stated, that on the 26th of November, 1860, he saw *Freeman* and *Munyan* taking the goods in question from the shelves of the store formerly occupied by Phalen, but on cross-examination he said that he did not know *Munyan*, but the man who was with *Freeman* was a man with reddish whiskers, whom he took to be *Bigelow's* foreman. Mrs. Phalen testified that on the 26th of November, 1861, she went to the store of her late husband, and *Freeman* was there and a red-whiskered man whom she took to be *Bigelow's* foreman; that the goods in question were then on the floor, and she shortly afterwards saw them carried from a dray into *Bigelow's* store; that she did not know *Munyan*; that she took the red-whiskered man to be *Bigelow's* foreman, because her husband had once sent her son to *Bigelow's* store and told him to ask for *Mr. Munyan*, and the boy returned and told her husband what *Mr. Munyan* said. Another witness stated that he was present when the goods were taken away from Phelan's store by *Freeman*, and a tall man with sandy whiskers.　The plaintiff also called *Freeman* as a witness, who testified that on the 26th of November, 1861, *Munyan* was foreman and cutter in *Bigelow's* store. The defendants moved for a nonsuit as to *Munyan*, or that the action be dismissed as to him, on the ground that he had not been identified by the proof as having been present at the taking of the goods.　The motion was overruled. They made the same motion as to all the defendants, on the

ground that the action was improperly brought by the plain-
tiff as administrator, (the conversion of the goods having oc-
curred after the death of Phalen), and that no demand of the
goods had been proven.  The motion was overruled.  The
defendants called the deputy city clerk of the city of Mil-
waukee, and having proved by him that the records and pa-
pers in his office were destroyed by fire on the 30th of De-
cember, 1860, asked him if he knew of an instrument
having been on file in said office at the time of the fire, pur-
porting to be a chattel mortgage executed by John Phalen
to *Charles Bigelow.*  The question was objected to, and the
objection was sustained.  They then handed the witness a
copy of a mortgage, which purported to have been exe-
cuted by John Phalen to *Charles Bigelow,* on the goods in
controversy, dated July 16th, 1860, attested by *J. Munyan*
and *John Gregory* as subscribing witnesses, and which contain-
ed an authority to *Bigelow* to take possession of the goods
whenever &c.  The copy was partly printed and partly writ-
ten, and the witness stated that so far as it was written, it
was in his handwriting.   He was then asked if he knew of
the original instrument having been on file in the city clerk's
office.  The question was objected to, and the objection sus-
tained.  The defendants then offered the paper in evidence,
there being attached to it a certificate of the city clerk, da-
ted November 24th, 1860, stating that it had been com-
pared with the original mortgage on file, and was a true copy.
The court admitted the paper as evidence that it was a copy
of an instrument that had been received and filed in the city
clerk's office, but not as evidence of any other fact.   The
city clerk testified that he presumed that the original, of
which said paper is a copy, was destroyed by fire in his of-
fice, that he had searched for it in the office since the fire,
and could not find it; and that he had never been acquain-
ted with Phalen.   The defendants then called *Munyan,* who
offered to testify " that on the 16th of July, 1860, the wit-
ness was in the employ of the defendant *Bigelow,* and then
had, and has since had, no claim against John Phalen or his
estate; that at the time of taking the goods specified in the
complaint, he acted as the agent of *Bigelow,* and had no in-

January Term, 1862.

KNOX
v.
BIGELOW et al.

terest in the goods and has since acquired none; that on the 16th of July, 1860, John Phalen executed in his presence, and delivered to the defendant *Bigelow*, an instrument in writing under his, Phalen's, hand and seal, of which the paper before given in evidence was a copy; and that the witness, at the time of its execution, subscribed his name to said instrument as a witness. The defendant *Freeman* also proposed to testify to the same effect, (except that he was not a subscribing witness to the mortgage), and that he filed the original instrument in the city clerk's office. The court refused to receive the testimony so offered, but permitted those witnesses to testify to any facts which had occurred since the death of Phalen. The defendants asked the court to instruct the jury that they must find for the defendants because the alleged conversion took place after the death of Phalen, and the plaintiff had no right to sue in his representative capacity; and because no evidence had been given of a demand of the goods. These instructions were refused. They also asked the court to instruct the jury, that if they believed from the evidence that the defendants took the goods by virtue of a mortgage upon them executed by Phalen to *Bigelow*, they must find for the defendants. The court told the jury that was so, but that there was no evidence before them of the existence of such a mortgage. Exceptions were taken by the defendants to all the rulings against them. Verdict for the plaintiff. The defendants moved for a new trial upon the judge's minutes and certain affidavits, which were in substance as follows: John Phalen deposed that he was the son of John Phalen deceased, and was fourteen years of age; that on or about the 28th of November, 1860, he went to the office of the city clerk in Milwaukee, at the request of his mother, to examine a mortgage given to *Charles Bigelow* by his father on his stock of boots and shoes; that he saw said instrument on file in said office, and took a copy of the schedule attatched to it; that he had often seen his father write, was well acquainted with his handwriting, and knew that the schedule was signed by his father, and that the signature to the instrument was also in his father's handwriting. The defendant *Bigelow* stated in his affidavit, that the mort-

gage referred to in the answer was executed to him by John Phalen on the 16th of July, 1860; that he had endeavored to obtain the evidence of John Gregory, one of the subscribing witnesses, on the trial of the action, but that he was an old and feeble man of very poor memory, and stated to the affiant that he could not sufficiently recollect the transaction to testify in regard to it, and that as the original had been destroyed he had no means of refreshing his recollection; that since the trial he had discovered that John Phalen, the son of the mortgagor, saw the mortgage on file and knew that it was signed by his father; that until the day before making said affidavit, the affiant had no intimation that said John knew anything in regard to the transaction; that the amount secured by the mortgage was actually due to him from the mortgagor, and that unless he should be allowed to prove the existence of the mortgage, he believed he would actually lose his debt. The affidavit of the city clerk stated, that he remembered that John Phalen, the son, applied to him to examine a mortgage from his father to *Charles Bigelow*, and that he exhibited to him the instrument referred to by said John in his affidavit, which was the only one then on file purporting to be made by John Phalen to *Charles Bigelow*, and was the one a copy of which was exhibited on the trial of this action. In opposition to the motion, the plaintiff's affidavit was read, stating that the age of Mr. Gregory was about sixty-five; that he was capable of attending to business, in good health, with intellect unimpaired; was a resident of the city of Milwaukee, and could have been produced as a witness on the trial of the action, as the affiant believed. Motion overruled, and judgment on the verdict.

*James G. Jenkins*, for appellants, argued that the plaintiff should have sued in his own right; that an administrator cannot sue as such, except where his intestate had a complete right of action in his lifetime, citing *Hollis vs. Smith*, 10 East, 293; *Talmage vs. Chapel*, 16 Mass., 71; *Mowry vs. Adams*, 14 id., 327; *Biddle vs. Wilkins*, 1 Pet., 692; *Savage vs. Merriam*, 1 Blackf., 176; *Barnes vs. Modisett*, 3 id., 253; *The People vs. Judges &c.*, 9 Wend., 486; *Mercein vs. Smith*,

*(Margin note:)* January Term, 1862.

Knox
v.
Bigelow et al.

2 Hill, 210 ; *Patchen vs. Wilson*, 4 id., 57 ; *Ketchum vs. Ketchum*, 4 Cow., 87 ; *Barker vs. Baker*, 5 id., 268 ; *Lawrence vs. Lawrence*, 3 Barb. Ch., 71 ; *Sheldon vs. Hoy*, 11 How. Pr. R., 14 ; *Woodruff vs. Cook*, 14 id., 481 ; *Colby vs. Colby*, 2 N. H., 420 ; that the court erred in excluding the testimony of *Munyan* to the execution of the mortgage ; that *Freeman* was a competent witness to prove the delivery of the mortgage, as the plaintiff had previously made him a witness ; and that the motion for a new trial should have been granted.

*Thomas M. Knox*, in person, as to the first point, cited *Ketchum* [vs. *Ketchum*, 4 Cow., 87 ; *Chamberlin vs. Spencer*, id., 550 ; *Barker vs. Baker*, 5 id., 267 ; *Valentine vs. Jackson*, 9 Wend., 302. The questions put to the deputy city clerk and overruled, were improper, even if the instrument in question had not been attested by subscribing witnesses, because they left the question of its execution untouched. *Munyan* was disqualified from testifying to the execution of the mortgage, and *Freeman* was incompetent to prove that fact until the non-production of the subscribing witness was accounted for. Both were incompetent to testify to facts occurring in the lifetime of Phalen. R. S. chap. 137, sec. 51. As to the motion for a new trial, it is clear that had young Phalen been called on the trial as a witness, he would not have been allowed to testify to the existence of the alleged mortgage. It is not a sufficient excuse for the non-production of Gregory, and other subscribing witnesses, that he stated when not under oath that he could not sufficiently recollect the transaction to testify in regard to it. He should have been put upon the stand, so that his knowledge could have been tested under oath ; besides, there is nothing in the affidavits to show that *Munyan* and *Freeman* were not aware before the trial, of the so-called newly discovered evidence, or that any diligence was used by any of the defendants to discover that evidence.

May 15.          *By the Court*, PAINE, J. We see no error in the rulings of the county court on the trial. The authorities relied on by the appellants to show that the suit should have been brought by the plaintiff in his individual, and not in his

representative capacity, do not sustain the position that it *must* be so brought. They only show that it *may* be, while, the clear implication from all of them is, that it may also be brought by the administrator, as such, of which there can be no doubt.

The evidence of the defendants as to what occurred in transactions to which the plaintiff's intestate was a party, was therefore properly excluded, and its exclusion would seem to have been clearly in accordance with the spirit of the law on that subject, even if the suit had been brought by the plaintiff in his individual capacity. For even then the litigation would have affected only the estate of the deceased, and it was the policy of the law that in such litigations, where the evidence of one of the parties to the original transaction out of which the litigation arose, could not be had, that of the other should not. It is true, the application of the rule worked some apparent hardship in this case, growing out of the facts that the mortgage had been destroyed, that one of the subscribing witnesses had forgotten in regard to it, and the other was one of these defendants. But such a peculiar state of facts, which could very seldom exist, cannot be allowed to change the law.

The motion for a nonsuit was properly overruled. The appellants claim that the evidence was not sufficient to connect the defendant *Munyan* with the taking of the property. It is true that, on cross-examination, the plaintiff's witnesses did not show a very thorough acquaintance with this defendant, but they described the man whom they " took to be" *Munyan*, as " a red-whiskered man." It appears that he was in court, and the jury would have been warranted in finding against him on this evidence, if he answered the description and nothing was offered to rebut it. Whether he did answer the description or not, the bill of exceptions does not disclose ; and we certainly could not say that a mo tion for a new trial should have been granted upon a question of identity, where the evidence described the party sought to be charged, and the record did not disclose whether that description was applicable to the party in court or not. For the court and jury are undoubtedly at liberty to

look at parties in court in determining questions of identity, and no appellate court could reverse a judgment for a refusal to nonsuit upon this ground, unless it was made to appear that the description was entirely inapplicable to the party objecting to the sufficiency of the evidence.

But we think the court should have granted a new trial upon the ground of newly discovered evidence. The affidavits upon this point are very satisfactory. The evidence supplies the defect in the defense so far as the existence of the mortgage was concerned; and there can be no ground for imputing *laches* to the defendants for not having previously obtained it. It comes from a son of the the intestate, and the defendants certainly cannot be charged with negligence in not going into his family for evidence to sustain their defense. It was said on the argument here, that the court below denied this motion for the reason that the defendants had not, on the trial, offered the testimony of Gregory, the other subscribing witness to the mortgage. But we think they should not have been held bound to such an apparently useless attempt. The affidavits show that Gregory was applied to, and said he had forgotten the fact of the execution of the instrument, and it being destroyed his memory could not be refreshed by inspecting it. This is certainly not very unnatural. There are very few who sign instruments as witnesses merely, who would be able to testify to their execution at any considerable time afterwards, without refreshing their memories with the instrument themselves. Gregory therefore having forgotten, we do not think the defendant should have been held bound to call him on the stand, and have him swear that he had forgotten, as a condition precedent to the right to avail themselves of newly discovered evidence, if they were fortunate enough to discover such after the trial. ·

For this reason we think the judgment should be reversed, with costs, and a new trial ordered.

A subsequent motion in this court by the appellant, for a judgment for costs against the respondent, was disposed of in the following opinion.

*By the Court,* PAINE, J.   The appellant's attorney has moved for a personal judgment against the respondent for costs.   The conversion complained of occurred after the death of the plaintiff's intestate, and it is claimed that as the suit might have been brought by the plaintiff in his own name, without suing in his representative capacity, therefore he shall be personally liable for costs.   This was undoubtedly the old rule, as the cases cited abundantly show.   But I am obliged to confess that I have never been able to see the reason of this distinction.   An administrator suing for a conversion of the property of the estate after the death of his intestate, is suing just as much for the benefit of the estate and just as little for his own benefit, as in a suit for a conversion during the intestate's lifetime.   There may be a technical difference in the two cases as to the necessity of his disclosing his representative capacity.   But this seems to me entirely immaterial upon the question whether he ought to be personally liable for costs, which ought in both cases to depend on the question whether he has been guilty of mismanagement or bad faith in bringing the action.   And I think the statute has accordingly abolished the old distinction, and provided that in neither case shall executors or administrators be liable to costs personally, unless the court shall specially direct it on account of mismanagement or bad faith.   R. S., 1858, chap. 133, sec. 49; *Woodruff v. Cook,* 12 How. Pr. R., 481.

The only reason for doubt upon this point, is the existence of sec. 13, chap. 103, which provides that " when costs are allowed against an executor or administrator, execution shall not issue against the estate of the deceased in his hands, but shall be awarded against him as for his own debt; and the amount paid by him shall be allowed in his administration account, unless," &c.   This seems directly repugnant to the other section, and perhaps there is no way of reconciling them, unless it may be done by holding the section just quoted to relate only to cases and proceedings in the probate courts.   It is found in a chapter relating entirely to the proceedings in those courts and to the rendering of accounts by executors and administrators.   Those courts may, in con-

January Term, 1862.

FARMERS' LOAN & TRUST CO. v. COMMERC'L B'K OF RACINE.

tested cases, give costs and award execution. Chap. 117, secs. 36, 37. It may well be said that these provisions were intended only as guides for the probate courts, and that in other cases courts must look to the chapter designed specially to regulate questions of costs in courts of record. If there is a conflict, the provisions of the latter chapter must govern. See sec. 11, chap. 191.

Whatever, therefore, may be the proper construction of sec. 13, chap. 103, we are satisfied that this motion should be governed by sec. 49, chap. 133, and it is therefore denied, but without costs.