WASHBURN, Respondent, vs. CHICAGO, ST. PAUL, MINNEAPO-
LIS & OMAHA RAILWAY COMPANY, Appellant.

*January 14 — January 31, 1893.*

*Railroads: Ejection of passenger: Evidence: Identity.*

1. Plaintiff alleged that he was wrongfully ejected from a train and robbed by defendant's employees. The evidence was conflicting as to whether it was plaintiff or his son who was ejected from the train, and as to the car from which he was ejected. *Held,* that it was error to strike out the testimony of plaintiff that he never made any complaint to defendant about the ejection or robbery until the action was commenced two years afterwards.

2. Upon the question as to the identity of the person ejected, a wide range of inquiry should have been allowed; and it was error to refuse to allow defendant to cross-examine the son as to whether he had trouble with the conductor of the train, what he said to the conductor or brakeman, whether he was put off from the train by the conductor or trainmen, and whether, for several minutes prior thereto, he had not been engaged in a conversation or wrangle with the conductor.

APPEAL from the Circuit Court for *Monroe* County.

This action was commenced on or about September 20, 1890. The complaint alleges, in effect, that November 5, 1888, the plaintiff purchased of the defendant and paid for a ticket at Black River Falls, a station on the defendant road, to Millston, another station on said road, and entered one of the defendant's regular passenger cars between 8 and 9 o'clock on the evening of that day, to go to said Millston, and that after reaching a distance a few miles from Black River Falls, and about ten miles from Millston, he was wrongfully and unlawfully and with great force and violence, and while the train was moving rapidly and not at a stopping place nor near any dwelling, ejected from the car in which he was so riding, by the agents, servants, and employees of the defendant in charge; and was so forcibly and violently assaulted, beat, and wounded that he became and was unconscious for some time; and that about $85 in money was at the time wrongfully and unlawfully taken from his pocketbook by said agents, servants, and employees, and converted to their own use; that it was a cold, dark, and uncomfortable night, and the plaintiff was obliged to walk from the place where he was so ejected to his home in Millston, which he reached about 3 o'clock the next morning; and that he became and was and is permanently injured and disabled in consequence, to his damage in the sum of $10,000, for which he demands judgment. The answer to said complaint consists of admissions and denials.

At the close of the trial the jury returned a verdict in

favor of the plaintiff for $1,000 damages. Judgment was entered thereon October 17, 1891, for $1,121.40, damages and costs. On March 21, 1892, the defendant moved to set aside and vacate said judgment, and for a new trial of said action, upon newly discovered evidence, and upon the proceedings, papers, and records on file in the case, and upon the affidavits therewith served and filed. Upon the hearing of said motion, and on March 24, 1892, the court made an order overruling and denying said motion, with $10 costs. From that order and said judgment the defendant appeals.

For the appellant there was a brief by *Morrow & Masters,* and a supplemental brief by *S. L. Perrin,* and oral argument by *R. J. MacBride* and *J. M. Morrow.*

For the respondent there was a brief by *Bleekman & Bloomingdale,* and oral argument by *F. H. Bloomingdale.*

CASSODAY, J. The sufficiency of the evidence to sustain the verdict cannot be questioned, for the reason that no motion was made for a new trial on that ground. The evidence on the part of the plaintiff tends to prove that he was ejected from the car as alleged in the complaint and mentioned in the foregoing statement. From his testimony it appears, in effect, that he purchased a ticket at Black River Falls, and upon boarding the train entered the smoking car; that when the conductor first came through that car, after leaving that station, he was unable to find his ticket; that the conductor then charged him with not having any ticket, and ordered him to leave the train, notwithstanding that he saw he had plenty of money; that after the conductor went through the train he returned with three brakemen or railroad employees, and that they forcibly ejected him from the train while the same was moving quite rapidly; that in the fall from the train he was injured and paralyzed, and for a short time senseless; that

when he came to his senses he found his son Lawrence was with him and that his money was gone; that Lawrence was not on the smoking car with him, but was on the train; that he and Lawrence were compelled to walk home to Millston, a distance of seven or eight miles; that at the time he was so ejected there were several on said smoking car, including the plaintiff's son Robert and one Mooney or Mohney; that Robert remained on the train until he got to Millston. Lawrence testified to the effect that he let his father have eighty-five dollars just before he got onto the train; that he himself got onto the car next to the smoking car; that as the conductor passed through that car he heard him say he would put his father off if he did not pay; that he then followed the conductor into the smoking car, and saw them put his father off; that he then went back into the car where he had been sitting; that the train soon stopped and backed up to near the place where his father had been ejected; that he got off the train, and saw his father lying upon the ground, and one of the brakemen going through his pockets; and he finally admitted, on cross-examination, that after the train was so backed down to the place where his father was lying he was himself put off the train; and that he had been drinking. The conductor and brakeman testified, and, in effect, flatly denied that they ejected the plaintiff from the train, or had any controversy with him on the occasion mentioned, or at any time; but stated that they did forcibly eject Lawrence from the train at Shepard's station, at the time mentioned, for the reason that he was intoxicated and refused to show any ticket or pay his fare; and that they ejected no other person from that train. There is evidence corroborating the testimony of the conductor, as well as the plaintiff. There is no pretense that two persons were ejected, except as may be inferred from the testimony of Lawrence Washburn, and he barely admitted, on cross-examination, the fact that

he was put off the train, without detailing any of the circumstances. With that exception all the testimony appears to agree that one man, and only one, was forcibly ejected from the train. Much of the conflict in the evidence is as to whether the man so ejected was the plaintiff or his son Lawrence, and whether such ejection was from the smoking car or the car next to it. In other words, much of such conflict is as to the identity of the man ejected and the car from which he was ejected.

In view of such conflicting testimony, we are constrained to hold that some of the rulings of the learned trial court were erroneous. Among such rulings may be mentioned that the court struck out testimony of the plaintiff to the effect that he never made any complaint to the defendant or any of its officers about being thus ejected from the train and robbed until the commencement of this action, nearly two years afterwards; and that he never complained to the district attorney of having been robbed or having lost his money; and yet the court allowed the son Lawrence to testify, against objection, that he let his father have $85 just prior to his boarding the train. The court also refused to allow the defendant's counsel to cross-examine Lawrence as to whether he had trouble with the conductor that night; and as to what he said to the conductor or brakeman before he got off the car; or as to who put him off the train; or as to whether he was put off the train by the conductor or any of the trainmen; or as to whether it was not true that, for five or ten minutes before he got off the train, he was all the time in the car in the rear of the smoker, and engaged in a conversation or wrangle with the conductor. Upon such question of identity a wide range of inquiry into the facts and circumstances of the case should be indulged. *Begg v. Begg*, 56 Wis. 534; *Knox v. Bigelow*, 15 Wis. 415. Especially is this so upon cross-

examination, as here.   Besides, some of the excluded testimony was admissible as tending to impeach the witness.

For the reasons given the judgment of the circuit court is reversed, and the cause remanded for a new trial.

*By the Court.*— Ordered accordingly.